UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FORD GLOBAL TECHNOLOGIES, LLC,

     Plaintiff,

v.

NEW WORLD INTERNATIONAL INC.,
AUTO LIGHTHOUSE PLUS LLC, and
UNITED COMMERCE CENTERS, INC.,

     Defendants.

Case No.  2:15-cv-10394
Honorable Laurie J. Michelson

---

**OPINION AND ORDER DENYING DEFENDANTS' SEALED MOTION TO
DISMISS FOR LACK OF PERSONAL JURISDICTION, IMPROPER VENUE, AND
FAILURE TO STATE A CLAIM [47]**

---

In this design patent infringement case, the Court must grapple with the unsettled issue of

whether a defendant's sale of goods to residents of a state via its website allows a court in that

state to exercise jurisdiction over the defendant without offending constitutional due process.

There are several other complicating factors. Personal jurisdiction is to be analyzed on a claim-

by-claim and defendant-by-defendant basis and here there are seven and three, respectively.

Additionally, two of the defendants do not directly sell any products in the forum state nor do

they have any physical presence in the forum state; so there is a question of whether the website

operating defendant's contacts can be imputed to the other two defendants or whether some other

personal-jurisdiction theory, including the unsettled stream-of-commerce rationale, justifies

haling them into this Court. Further still, jurisdictional discovery has revealed that only some of

the allegedly infringing goods were sold in the forum state, leading to a difficult question of

whether all seven claims of infringement "arise out of or relate to" the defendant's forum

contacts. And finally, the parties have talked past each other in the briefing, often making no attempt to address each other's cited authority.

The Court has reviewed the extensive briefing and jurisdictional discovery and is now ready to rule. *See* E.D. Mich. LR 7.1(f)(2). For the reasons that follow, the Court finds that Plaintiff Ford Global Technologies, LLC has carried its burden of demonstrating that this Court may properly exercise jurisdiction over Defendants United Commerce Centers, Inc., New World International Inc., and Auto Lighthouse Plus, LLC.

## I.

## A.

Defendant United Commerce Centers, Inc. is a Texas corporation located on East State Highway in Irving, Texas. (Dkt. 47, Defs.' Mot. Ex. 1, Joseph Tsai Decl. at PID 1350.) The company is owned by Peter and Grace Tsai. (Defs.' Mot. Ex. 1 at PID 1297.) United Commerce has identified its subsidiary, Defendant New World International, Inc., as a "doing business as" designation (Defs.' Mot. Ex. 22, Joseph Tsai Dep. at PID 1592; Pl.'s Mot. Ex. 1, Leshan Decl. at PID 2034), and, for purposes of the current jurisdictional dispute, the parties treat United Commerce and New World as one. Where appropriate, the Court will too.

Like its parent, Defendant New World is a Texas corporation and has its principal place of business at the same State Highway facility. (Joseph Tsai Decl. at PID 1351.) Peter and Grace Tsai also own New World. (Defs.' Mot. Ex. 1 at PID 1291.) New World sells automotive body parts at its stores located in Texas, Louisiana, Oklahoma, and Mississippi. (Defs.' Mot. Ex 1 at PID 1297; Joseph Tsai Decl. at PID 1351.)

Defendant Auto Lighthouse, LLC is owned by Peter and Grace Tsai and their four children: Joseph, Daniel, David, and Alice Tsai. (Defs.' Mot. Ex. 1 at PID 1292.) Auto

Lighthouse also works out of the State Highway facility. (Dkt. 50, Pl.'s Resp. Ex. 3, Joseph Tsai Dep. at PID 2442.) But unlike New World, Auto Lighthouse has no physical stores. Instead, Auto Lighthouse sells auto parts online via several websites. (Defs.' Mot. Ex. 1 at PID 1297–98.) But because Auto Lighthouse has no inventory (Defs.' Mot. Ex. 1 at PID 1298), when an online order is placed, Auto Lighthouse fills the order by immediately purchasing it from New World (it pays later in lump sums) and then has one of its employees pull the part from New World's inventory (Pl.'s Resp. Ex. 3, Joseph Tsai Dep. at PID 2442–43; Pl.'s Resp. Ex. 9, Daniel Tsai Dep. at PID 2539, 2546). Auto Lighthouse ships automotive body parts to the contiguous 48 states. (Leshan Decl. at PID 2030, 2033.) Via its websites, Auto Lighthouse has sold over 15,000 parts to Michigan residents. (Leshan Decl. at PID 2036, 2037.)

## B.

Plaintiff Ford Global Technologies, LLC, which has its principal place of business in Michigan, filed this lawsuit in the Eastern District of Michigan in January 2015. Ford asserts that Defendants, by selling certain auto parts, have infringed seven of its design patents. (Am. Compl. at PID 251–61.) For example, Ford holds U.S. Patent No. D496,890, directed to a grille for a 2004 Ford F-150, and claims that Defendants have made, used, imported, offered for sale, or sold a grille that looks substantially similar to the design of the '890 patent:



(Am. Compl. at PID 253.) Ford asserts infringement of two other 2004 F-150 body parts: a headlamp Defendants sell is alleged to infringe U.S. Patent No. D493,552 and a hood Defendants

sell is alleged to infringe U.S. Patent No. D493,753. In addition to those three F-150 parts, Ford says that Defendants have sold four body parts of the 2005 Mustang that infringe: a base front bumper fascia (U.S. Patent No. D498,444); a GT front bumper fascia (D501,162); a hood (D510,551); and a taillamp (D539,448). (Am. Compl. at PID 251–61.)

## C.

Although Ford filed its suit a year-and-a-half ago, this case is still in the starting blocks. Not long after Ford filed its Complaint, Defendants moved to dismiss the case for lack of personal jurisdiction. (Dkt. 16.) Noting the excessive briefing by the parties, and that both sides suggested that jurisdictional discovery would aid in resolving their disagreement, the Court struck Defendants' motion and permitted discovery on the issue of personal jurisdiction. (Dkt. 27.)

Discovery ensued on this seemingly limited issue, but, as the Court remarked in a prior order, discovery "appear[ed] to be anything but limited." (Dkt. 35.) Indeed, the parties had a plethora of disputes over discovery requests. (*See* Dkts. 28, 30, 33, 35–45.)

In all events, jurisdictional discovery has concluded, and Defendants again move to dismiss this case for lack of personal jurisdiction. (Dkt. 47, Defs.' Mot.; *see also* Dkt. 51, Defs.' Reply.) Defendants also assert that venue is improper, and that Ford's amended complaint fails to state a claim upon which relief may be granted. (*Id.*) Ford disagrees. (Dkt. 50, Pl.'s Resp.)

## II.

The Court turns first to Defendants' argument that this Court lacks personal jurisdiction over Ford's claims against just one of the three defendants, Auto Lighthouse.

Often, whether a Court may exercise jurisdiction over a defendant is a two-step inquiry: Does the state's long-arm statute permit service of process on the defendant? And, if so, does

requiring the defendant to litigate in the forum comport with the Due Process Clause? *Grober v. Mako Products, Inc.*, 686 F.3d 1335, 1345 (Fed. Cir. 2012). But here, Auto Lighthouse does not claim it is beyond the reach of Michigan's long-arm statute. (*See generally* Defs.' Mot.) So the Court turns to the second question. *See Celgard, LLC v. SK Innovation Co.*, 792 F.3d 1373, 1378 (Fed. Cir. 2015) ("The parties do not contest whether jurisdiction was proper under [the state's] long-arm statute. Hence, we consider only the due process inquiry.").

Due process requires that Auto Lighthouse have sufficient "minimum contacts with [Michigan] such that maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quotation marks and citation omitted). The requisite nature and quality of the contact depend on the type of jurisdiction asserted: general or specific. Here, Ford asserts only specific jurisdiction.

Under Federal Circuit law (which governs the personal jurisdiction inquiry given Ford's complaint asserts only patent infringement, *Grober*, 686 F.3d at 1345), this Court "determine[s] whether the due process requirement for specific personal jurisdiction is met by considering (1) whether the defendant purposefully directed its activities at residents of the forum state, (2) whether the claim arises out of or relates to the defendant's activities with the forum state, and (3) whether assertion of personal jurisdiction is reasonable and fair," *Celgard*, 792 F.3d at 1377.

It is Ford's burden to establish the first two prongs, and if it carries that burden, Auto Lighthouse would have the burden of showing that other considerations make the maintenance of this case in Michigan unfair. *See Celgard*, 792 F.3d at 1377. But Auto Lighthouse has not argued the "fair play and substantial justice" factors, *see Asahi Metal Indus. Co. v. Superior Court of*

5

*California, Solano Cty.*, 480 U.S. 102, 113 (1987), so the personal-jurisdiction question reduces to the first two prongs.

The parties do not discuss Ford's burden of proof. The general rule is that where a court holds no evidentiary hearing, the plaintiff only has to make a *prima facie* showing that the court may exercise personal jurisdiction over the defendant. *Celgard*, 792 F.3d at 1378. But there is an exception: where there has been jurisdictional discovery and the facts pertaining to the jurisdiction inquiry are not in dispute, the plaintiff must make a showing by a preponderance of the evidence—even if the court does not hold an evidentiary hearing. *Id.* Here, on the question of whether this Court can require Auto Lighthouse to defend Ford's claims in Michigan, the Court's review of the parties' briefs indicates no genuine disputes over any fact material to personal jurisdiction. So the Court will require Ford to show, more likely than not, that Auto Lighthouse purposefully directed its activities at residents of Michigan and that its claims against Auto Lighthouse arise out of or relate to those activities.

## A.

Starting with the first specific-jurisdiction prong, the Court finds that, more likely than not, Auto Lighthouse purposely availed itself of the benefits of doing business in Michigan by selling thousands of auto parts to Michigan residents via several different websites.

As an initial matter, Auto Lighthouse's websites indicated that it wanted to do business with Michigan residents. For example, Auto Lighthouse's autobodycarparts.com site informed potential purchasers that it "ship[ped] to all U.S. states with the exception of Alaska and Hawaii." (Pl.'s Resp. Ex. 1, Leshan Decl. at PID 2033.) Similarly, Auto Lighthouse's virtual store on ebay.com informed purchasers that it would ship to the "United States" but not "Alaska/Hawaii, US Protectorates, APO/FPO." (Leshan Decl. at PID 2030.) Although separately

6

listing each of the 48 contiguous states might have made it even more explicit that Auto Lighthouse wanted to sell to Michigan, the contiguous 48 states made the point well enough. *See Illinois v. Hemi Grp. LLC*, 622 F.3d 754, 758 (7th Cir. 2010) ("Although listing all forty-nine states by name would have made a stronger case for jurisdiction in this case, inasmuch as it would have expressly stated that Hemi wanted to do business with Illinois residents, the net result is the same—Hemi stood ready and willing to do business with Illinois residents.").

And Auto Lighthouse did more than just indicate a willingness to do business with Michigan residents: it in fact did business with Michigan residents—and a good amount. PayPal records reflected that Auto Lighthouse has consummated over 13,000 transactions with Michigan residents resulting in over $900,000 in sales. (Leshan Decl. at PID 2036.) And amazon.com records for "Daniel Tsai/Auto_Lighthouse" revealed over 2,600 transactions with Michigan residents totaling over $180,000 in sales. (Leshan Decl. at PID 2037.) Although these amounts are only 1.82% of Auto Lighthouse's total sales (Defs.' Reply Ex. 1, Joseph Tsai Decl. at PID 2872), over 15,000 transactions with Michigan residents, totaling over a million dollars in revenue, is still jurisdictionally significant.

To the extent that Auto Lighthouse maintains that it did not target Michigan residents (because it sold to all 48 contiguous states), the Court is unconvinced that this matters much. Auto Lighthouse no less purposely availed itself to the benefits of selling to Michigan residents because it also sold to residents of, say, New York. To the contrary, the fact that Auto Lighthouse sold parts nationwide undoubtedly increased its online presence, thereby better enabling it to sell to Michigan residents. *See Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 781 (1984) ("Respondent produces a national publication aimed at a nationwide audience. There is no unfairness in calling it to answer for the contents of that publication wherever a substantial

number of copies are regularly sold and distributed."); *Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 171 (2d Cir. 2010) ("As [plaintiff] correctly asserts, that [defendant's] business attempted to serve a nationwide market does not diminish any purposeful contacts with [defendant's] New York consumers.").

Given that Auto Lighthouse created and used several websites to offer its auto parts to the residents of Michigan, that Michigan residents ordered thousands of such parts using these websites, that Auto Lighthouse filled these orders and shipped goods to Michigan residents on a near daily basis, and that those sales amounted to a not insignificant amount of Auto Lighthouse's total sales, it would be improper to characterize Auto Lighthouse's contacts with Michigan as "random," "fortuitous," or "attenuated," *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985). Instead the Court finds that, more likely than not, Auto Lighthouse "purposefully avail[ed] itself of the privilege of conducting activities within [Michigan], thus invoking the benefits and protections of its laws," *Hanson v. Denckla*, 357 U.S. 235, 253 (1958). *See also World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980) ("[I]f the sale of a product of a manufacturer or distributor . . . is not simply an isolated occurrence, but arises from the efforts of the manufacturer or distributor to serve directly or indirectly, the market for its product in other States, it is not unreasonable to subject it to suit in one of those States if its allegedly defective merchandise has there been the source of injury to its owner or to others.").

Auto Lighthouse resists this conclusion by arguing that sales via a third-party website such as ebay.com do not count as purposeful availment. In support of this claim, Auto Lighthouse relies primarily on *Trintec Industries Inc. v. Pedre Promotional Products, Inc.*, 395 F.3d 1275 (Fed. Cir. 2005).

*Trintec* does not support Auto Lighthouse's position—it cuts against it. There, the Federal Circuit stated that websites other than the defendant's would "support jurisdiction only if [the defendant] had some responsibility for the third party's advertising of [the defendant's] products on [those] sites." *Id.* at 1281. Just so here. While Auto Lighthouse does not operate or control ebay.com or amazon.com, it does control what products it sells and offers for sale on those websites. And, more importantly, Auto Lighthouse controlled which forums it would sell to. It did not exclude Michigan. And for these reasons, the Court also finds unpersuasive Auto Lighthouse's other cases about sales via third-party websites. *See e.g.*, *Foreign Candy Co. v. Tropical Paradise, Inc.*, 950 F. Supp. 2d 1017, 1031 (N.D. Iowa 2013) (finding that link on defendant's website to a third-party website that sold defendant's goods was insufficient to conclude that defendant purposefully availed itself to the forum, but noting that a defendant's sales on eBay or Amazon may be attributed to the defendant because they are sufficiently akin to sales via the defendant's own website).

**B.**

Thus, the question becomes which, if any, of the claims Ford asserts in this lawsuit "arise out of or relate to" Auto Lighthouse's sales of over 15,000 auto parts to Michigan residents.

Ford's Amended Complaint raises seven counts. Each asserts that Auto Lighthouse (and New World and United Commerce) have infringed one of Ford's design patents. For instance, regarding U.S. Patent No. D493,552 directed to a headlamp for a Ford F-150 truck, Count I states, "Defendants have infringed and continue to infringe the '552 patent by, inter alia, making, using, importing, offering to sell, or selling [in] the United States, including the State of Michigan and within this District, products infringing the ornamental design covered by the '552 patent in violation of 35 U.S.C. § 271(a)." (Am. Comp. at PID 252.) Ford's other six counts

assert a different design patent and accuse a different product of infringement, but otherwise make the same allegation. (*See* Am. Compl. at PID 253–61.)

In determining whether these seven claims "arise out of or relate to" Auto Lighthouse's contacts with Michigan, Auto Lighthouse correctly asserts that each count must be assessed individually. (Defs.' Mot. at PID 1257.) In other words, Ford must, for each count, show a basis to require Defendants to defend that count in this forum. *See Kindig It Design, Inc. v. Creative Controls, Inc.*, — F.3d —, No. 14-00867, 2016 WL 247574, at *2 (D. Utah Jan. 20, 2016).

Building on this legal premise, Auto Lighthouse points out that other than a purchase by Ford in an attempt to manufacture jurisdiction, there is no evidence that Auto Lighthouse sold any of the following three accused parts to Michigan residents: the F-150 grille, the Mustang (GT) front bumper fascia, and the Mustang taillamp. (Defs.' Mot. at PID 1251 n.1, 1257–58.) As for the other four accused parts—the Mustang (base) front bumper fascia, the F-150 headlamp, the Mustang hood, and the F-150 hood—Auto Lighthouse points out that discovery revealed only one, two, five, and eleven sales to Michigan residents, respectively. Thus, argues Auto Lighthouse, "[g]iven zero sales of some items, *de minimus* sales of others through eBay, and no evidence of sales into Michigan of accused parts on Defendants' websites or Amazon, it is clear Defendants were not targeting or purposefully directing sales activities toward Michigan with regard to the accused products." (Defs.' Reply at PID 2860 n.2.) As for the 15,000 (or so) sales of parts not accused of infringement, Auto Lighthouse says these sales are "not relevant" to the specific-jurisdiction question as they did not give rise to Ford's claims in this case. (*See* Defs.' Reply at PID 2860.)

As an initial matter, the Court doubts that selling five and eleven allegedly infringing parts to Michigan residents can be deemed *de minimus* contact with Michigan. *See Burger King*

10

*Corp. v. Rudzewicz*, 471 U.S. 462, 476 n.18 (1985) ("So long as it creates a 'substantial connection' with the forum, even a single act can support jurisdiction."); *cf. Shamsuddin v. Vitamin Research Products*, 346 F. Supp. 2d 804, 817 (D. Md. 2004) (finding that defendant's acts of offering infringing product for sale via its website, and selling *two* such products to forum residents *to acquaintances of the plaintiff*, did not establish minimum contacts).

But resolution of this question is not material to the Court's analysis. True, one way Ford seeks to show that this Court has personal jurisdiction over all seven claims is to argue (1) this Court may require Defendants to defend some claims in this forum based on sales of allegedly infringing parts to Michigan residents, and (2) the remaining claims are pendent to those claims. (Pl.'s Resp. at PID 2006–07.) But Ford has not persuaded the Court that an exercise of pendent personal jurisdiction is proper in this case. Pendent personal jurisdiction is proper when, like pendent subject-matter jurisdiction, the pendent claim and foothold claim share "a common nucleus of operative fact." *Silent Drive, Inc. v. Strong Indus., Inc.*, 326 F.3d 1194, 1206 (Fed. Cir. 2003). Ford points out that all of the allegedly infringing parts are from only two vehicles, that the evidence will be "similar across the different patents," and that the same witnesses will be deposed about all seven patents. (Pl.'s Resp. at PID 2007.) But it seems to this Court that the key issues in this case are whether an accused part infringes the asserted patent and whether the asserted patent is valid. The Court thinks it unlikely that the key facts pertaining to whether the accused F-150 grille infringes D496,890 will be the same as those pertaining to whether the accused Mustang hood infringes D510,551. Nor is it apparent that the validity of the '890 patent has anything to do with the validity of the '551 patent. In short, the Court is doubtful that it may exercise pendent jurisdiction over all seven claims in this case even if five and eleven sales of parts that allegedly infringe two patents are not *de minimus* contacts.

Thus, this Court must address Auto Lighthouse's claim that the jurisdictionally relevant contacts are only its sales and offers for sales to Michigan residents of parts accused of infringement. The Court finds that the scope of jurisdictionally relevant contacts are not limited to the accused parts; or, looking at the other side of the same coin, the Court finds that the "arises out of or relates to" inquiry does not require the close tie between contacts and claim that Auto Lighthouse advocates.

In the absence of guidance from the Supreme Court, the federal Courts of Appeal have come up with several approaches to the "arises out of or relates to" prong of the specific-jurisdiction test. One approach requires that the forum contacts be the proximate cause of the plaintiff's claim. *See Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1078 (10th Cir. 2008) (discussing approaches). Another, more expansive approach, requires that the defendant's forum conduct be only a "but for" cause of the plaintiff's claim. *See id.* A third approach uses a sliding scale: as the quality and quantity of the defendant's forum contacts increase, the required tie between those contacts and the plaintiff's claim becomes looser. *See id.* A fourth approach focuses on whether the cost of defending in the forum is a fair exchange for the benefits the defendant derived from doing business in the forum. *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 323 (3d Cir. 2007) (providing that the tie between contact and claim must be "intimate enough to keep the quid pro quo proportional and personal jurisdiction reasonably foreseeable").

Although it has questioned its precedents in this area, the Federal Circuit has unambiguously stated that its "own interpretation of the 'arise out of or related to' language is far more permissive than either the 'proximate cause' or the 'but for' analyses." *Avocent Huntsville Corp. v. Aten Int'l Co.*, 552 F.3d 1324, 1337 (Fed. Cir. 2008). The Federal Circuit has explained

12

that in an action seeking a declaration of non-infringement, where it is the patentee's efforts to enforce its patent that gives rise to the declaratory-judgment plaintiff's cause of action, "the patentee's efforts to license or enforce its patent against unrelated parties in the forum state" helps establish minimum contacts. *Id.* This was so even though the patentee's attempts to enforce its patent against parties unrelated to the declaratory-judgment plaintiff would (quite obviously) not give rise to a case or controversy between the patentee and the declaratory-judgment plaintiff. *Id.* And in accord with this broad understanding of the "arises out of or relates to" requirement, the Federal Circuit has also stated, "it is significant that the constitutional catch-phrase is disjunctive in nature, indicating an added flexibility and signaling a relaxation of the applicable standard from a pure 'arise out of' standard." *Inamed Corp. v. Kuzmak*, 249 F.3d 1356, 1362 (Fed. Cir. 2001).

Given the Federal Circuit has interpreted the second prong of the specific-jurisdiction test as permitting a rather loose tie between the defendant's forum contacts and the plaintiff's claims, the Court finds that Ford's claims "relate to" Auto Lighthouse's conduct in Michigan. Using its website, which includes the accused parts and many others, Auto Lighthouse has sold and offered for sale auto parts to Michigan residents. And this conduct is a significant part of a bigger picture: Auto Lighthouse's business of selling auto parts via its websites to the contiguous 48 states. And Ford's claims in this lawsuit are (at least) related to this business because it is through this business (and only through this business) that Auto Lighthouse has allegedly infringed Ford's patents. Stated differently, the sale and offer for sale of auto parts via its websites, a not insignificant part of which Auto Lighthouse has done in Michigan, is the very conduct that gave rise to Ford's claim that Auto Lighthouse has infringed its patents.

*Chloé v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158 (2d Cir. 2010), supports this reasoning. There, Chloé filed suit in New York against Queen Bee, an Alabama LLC, and Simone Ubaldelli, one of Queen Bee's principals located in California. Chloé claimed that Queen Bee had been selling counterfeit Chloé handbags. The challenge for Chloé was that the evidence indicated that Queen Bee and Ubaldelli had only sold one Chloé knockoff to a resident of New York—and this resident was Chloé's private investigator. In favor of personal jurisdiction, however, Queen Bee "operated a website which offered Chloé bags for sale to New York consumers, permitted New York consumers to purchase such bags, and facilitated the shipment of those bags into New York from [California], where Ubaldelli was located." *Id.* at 166. Further, and more important for present purposes, Queen Bee had sold 52 non-Chloé handbags to the residents of New York. *Id.* The district court had thought these 52 sales were not relevant contacts given that they were not sales of Chloé knock-offs. The Second Circuit reversed: "We think the district court's characterization of Defendants' non-Chloé sales . . . too narrowly construes the nexus requirement, which merely requires the cause of action to 'relate to' defendant's minimum contacts with the forum." *Id.* at 167. The Court of Appeals further explained: "Queen Bee, through its website, offered Chloé handbags—including the counterfeit handbag sent to plaintiff's investigator—for sale to New York consumers, itself a possible trademark violation. It further sold other designer merchandise to New York consumers. Thus, these additional contacts show that the shipment of a counterfeit Chloé bag was not, as the district court thought, a 'one-off transaction,' but rather a part of a larger business plan purposefully directed at New York consumers." *Id.* (citations omitted, emphasis added).

So too here. Like the plaintiff in *Chloé*, Auto Lighthouse's sales of certain accused parts to Michigan residents was nonexistent or arguably *de minimus*. But Auto Lighthouse's sales of

other auto parts to Michigan residents totaled over 15,000. Thus, Auto Lighthouse's sale or offers for sale of the accused products in Michigan or elsewhere was simply "part of a larger business plan," *Chloe*, 616 F.3d at 167, a plan that included near daily sales to Michigan residents.

Auto Lighthouse cites two district court opinions interpreting the "arising out of or relates to" language more narrowly. In *Canplas Indus., Ltd. v. InterVac Design Corp.*, a Florida corporation was sued for patent infringement in Ohio. No. 1:13 CV 1565, 2013 WL 6211989, at *1 (N.D. Ohio Nov. 22, 2013). Although the defendant had not sold the allegedly infringing product in Ohio, it had, via its website, sold 55 other products to Ohio residents. *Id*. at *2. But the court found that the plaintiff's claim for patent infringement did not "arise out of" these 55 sales, noting that the plaintiff had not cited any cases supporting "the idea that a cause of action for patent infringement can arise from the sale of other unrelated products to residents of a judicial district via a website which also allowed for the sale of the Accused Product." *Id.* at *3.

In *Round Rock Research LLC v. ASUSTeK Computer Inc.*, a California company was sued for patent infringement in Delaware. 967 F. Supp. 2d 969, 972 (D. Del. 2013). For one of the asserted patents, the plaintiff had accused only a particular monitor of infringing, and the evidence indicated that the defendant had sold—at most—three of those to Delaware residents. *Id.* at 974–95. The plaintiff, perhaps recognizing that three sales would not suffice to establish minimum contacts, argued that the defendant had sold Delaware residents other products that infringed the same patent. *Id.* at 975. The court was not persuaded: "I do not accept that Plaintiff can show personal jurisdiction by accusing one product in the complaint and asserting jurisdiction based on a product not named in the complaint." *Id.*

15

The Court, however, finds *Chloé* more persuasive than *Canplas* and *Round Rock*. For one, *Chloé* is more on point and more thoroughly reasoned. *Canplas* involved an analysis under Ohio's long-arm statute, not the Due Process Clause; further the court simply pointed out that the plaintiff had failed to cite any authority to back its claim (if only the plaintiff had known about *Chloé*). As for *Round Rock*, the court there cited no authority to back its statement about the relevant contacts. In contrast, the *Chloé* court explained at some length why the due-process inquiry includes the defendant's forum contacts beyond those that directly gave rise to the plaintiff's claims. Second, and more importantly, *Chloé* is more consistent with the Federal Circuit's interpretation of the phrase "arises out of or relates to." As explained, the Federal Circuit has suggested that "relates to" is to be accorded meaning apart from "arises out of," *Inamed*, 249 F.3d at 1362, and has stated that its interpretation of the required tie between contact and claim is "far more permissive than either the 'proximate cause' or the 'but for' analyses," *Avocent*, 552 F.3d at 1337.

Auto Lighthouse also relies on *Kindig-It Design, Inc. v. Creative Controls, Inc.*, No. 14-00867, 2016 WL 247574 (D. Utah Jan. 20, 2016), to argue that the exercise of personal jurisdiction is improper in this case. (Defs.' Mot. at PID 1255–56.)

In *Kindig-It*, the plaintiff filed suit in Utah asserting that the defendant, a Michigan corporation with no physical presence in Utah, had infringed its patents by selling auto parts. *Id.* at *1. As the only sale by the defendant to a Utah resident was one created by the plaintiff, "specific personal jurisdiction [could] exist only if [the defendant] established contacts with Utah by offering to sell the allegedly infringing products to Utah residents." *Id.* at *6. Although the defendant's website offered the allegedly infringing products to anyone who visited the site (including Utah residents), the court found that "[Plaintiff] has failed to plead any facts showing

16

that any Utah resident (other than in connection with [Plaintiff's] orchestrated sale) has ever visited [Defendant's] website. Thus, even assuming that the website constitutes an offer to sell under Federal Circuit law, there is no evidence that [Defendant] has ever made an offer to sell an allegedly infringing product to a Utah resident via its website." *Id.* at *8. The court further found that "without such evidence" the defendant's website did not create "sufficient minimum contacts with Utah to constitute purposeful availment of the Utah forum." *Id.* at *8.

Given this Court's analysis, *Kindig-It*'s rule—that to establish minimum contacts via *offers* for sale, the plaintiff must prove that a forum resident saw the offer—has no role to play. Unlike in *Kindig-It*, in this case there is evidence of *sales* to forum residents on a near daily basis. And the Court has already explained that Ford's claims "relate to" that established channel of business with Michigan residents. Thus, in this case, there is no need for Ford to show that its claims arise out of Auto Lighthouse's *offers* of accused parts for sale to Michigan residents. It follows that there is no need for Ford to show that Michigan residents viewed an Auto Lighthouse webpage offering an accused part for sale. *Cf. Kindig-It*, 2016 WL 247574, at *8.

## C.

Auto Lighthouse (and New World and United Commerce) also argue that this Court may not require them to defend in this forum because Ford's claims fail to state a claim for relief.

The Court is not persuaded by Defendants' attempt to disguise a Rule 12(b)(6) motion as one under Rule 12(b)(2). Defendants fail to cite a single dismissal for lack of personal jurisdiction based on the plaintiff's failure to plead a viable claim. And at least one court has ruled to the contrary. *Ferrigno v. Philips Elecs. N. Am. Corp.*, No. C-09-03085, 2010 WL 2219975, at *5–6 (N.D. Cal. June 1, 2010). Accordingly, the Court declines Defendants' invitation to conflate Rule 12(b)(2) and Rule 12(b)(6).

17

That said, Defendants have also moved to dismiss Ford's claims pursuant to Rule 12(b)(6). In particular, Defendants argue that six of the asserted patents are invalid because the exclusive territory they claim is indefinite. And even if those patents are valid, Defendants say that none of the accused parts are similar enough to any of the patented designs to make infringement plausible. (See Defs.' Mot. at PID 1258–59, 1270–78.)

Because the issues of indefiniteness and infringement are not presently adequately briefed, the Court will deny Defendants' Rule 12(b)(6) motion without prejudice.

As an initial matter, the quantity of briefing suggests more is required. Infringement and validity are the central issues of this lawsuit. And here, the Court deals with not just one patent asserted against one product. Ford instead says that seven parts infringe seven patents and Defendants say that six patents are invalid. But neither party's briefing addresses these issues sufficiently to account for their importance, their complexity, and their volume. (*See* Defs.' Mot. at PID 1270–78; Pl.'s Resp. at PID 2017–22.)[1]

Second, although definiteness is assessed from the viewpoint of one of ordinary skill in the field, *Nautilus, Inc. v. Biosig Instruments, Inc.*, — U.S. —, 134 S. Ct. 2120, 2124, 189 L. Ed. 2d 37 (2014), Defendants have not described the knowledge and experience of this person. Nor have they explained how that knowledge and experience colors the lens through which the design patents are viewed.

---

[1] Moreover, the parties have not yet (to this Court's knowledge) exchanged infringement and invalidity contentions—a process that this Court typically imposes in patent cases because it allows the parties to at once better develop their arguments while narrowing the issues requiring this Court's resolution. And, although design patents may require a departure from the norm, *see generally Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665 (Fed. Cir. 2008), indefiniteness would normally be addressed at claim construction, *see Apple, Inc. v. Samsung Elecs. Co.*, 932 F. Supp. 2d 1076, 1084 (N.D. Cal. 2013) ("indefiniteness is intimately linked to claim construction"), and the issue of infringement after that.

18

Relatedly, although the Court acknowledges that the issue of indefiniteness can sometimes be decided based on only intrinsic evidence, resort to extrinsic evidence is not prohibited, *Datamize, LLC v. Plumtree Software, Inc.*, 417 F.3d 1342, 1348 (Fed. Cir. 2005), and can sometimes "help the court determine what a person of ordinary skill in the art would understand claim terms to mean," *Phillips v. AWH Corp.*, 415 F.3d 1303, 1319 (Fed. Cir. 2005). To this end, Ford would like the Court to consider a declaration from an automotive designer stating that one skilled in the art would "easily understand and make the claimed designs [of the four F-150 patents] upon review of the patent figures, the specification and/or prosecution history." (Pl.'s Resp. at PID 2020–21.) As such, Defendants should have briefed in greater detail why consideration of extrinsic evidence is improper with respect to each of the patents-in-suit.

A third issue with Defendants' briefing is that Defendants rely on materials that may be improper for consideration on a Rule 12(b)(6) motion as they are not part of the Amended Complaint and it is unclear whether they are central to Ford's claims. (*See* Defs.' Mot. at PID 1272 n. 6 (referencing Patent No. D501,685); PID 1273 (referencing "Ex.5;701,702"); PID 1275 (referencing Patent No. D489,299); PID 1275 (referencing "Ex.5:699"); PID 1276 (referencing "Ex. 5:703" and "Ex. 5:704"); PID 1278 (referencing "Ex. 5:702").) Defendants offer no explanation for why the Court may or should consider these materials on a 12(b)(6) motion.

Fourth, regarding infringement, Defendants identify differences between the accused parts and the patented designs, but fail to weigh those differences against the similarities. The infringement analysis of a design patent involves comparing the design as a whole to the accused part as a whole. *See Crocs, Inc. v. Int'l Trade Comm'n*, 598 F.3d 1294, 1303 (Fed. Cir. 2010) (finding that International Trade Commission's "concentration on small differences in isolation

distracted from the overall impression of the claimed ornamental features" and explaining that the "ordinary observer test applies to the patented design in its entirety").

Fifth, Defendants do little to incorporate the standard governing dismissal pursuant to Rule 12(b)(6) into their non-infringement and invalidity arguments. It is not enough to show that an ordinary observer would likely find the accused parts materially dissimilar from the patented designs. Rather, at the pleading stage, it is Defendants' burden to show that the converse is not even plausible. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). As for indefiniteness, that is an affirmative defense that Defendants must ultimately establish by clear and convincing evidence. *Datamize*, 417 F.3d at 1348. But at the pleading stage, Defendants burden is still higher: if, upon construing the allegations in the light most favorable to Ford, it is even plausible that one skilled in the art could be reasonably certain about the patents' scope, Ford should have the opportunity for discovery. *See Iqbal*, 556 U.S. at 678.

This is not to say that all the briefing shortcomings are Defendants'. As noted, in defense of its seven claims of infringement and the validity of six of its patents, Ford offers only five pages of argument. Moreover, Ford seems to partly misunderstand the nature of Defendants' Rule 12(b)(6) motion. Ford asserts that it has adequately pled its infringement claims because its allegations conform with the (bare-bones) model patent complaint formerly part of the Federal Rules of Civil Procedure Appendix of Forms. But Defendants do not claim that Ford's allegations are conclusory, *see Iqbal*, 556 U.S. at 678. They argue that in light of all the materials proper for consideration under Rule 12(b)(6), *see Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008), it is not plausible that Ford can recover. In other words, Defendants' motion is similar to one for summary judgment, but where the evidence is restricted

20

to Rule 12(b)(6) materials and the burden is to show implausibility. Such a motion is proper under Rule 12(b)(6). *See Jones v. Bock*, 549 U.S. 199, 214–15 (2007).

In short, the Court finds that the merits of Ford's claims are not at issue in deciding whether this Court can require Defendants to defend those claims in this forum, and, to the extent that Defendants have moved under Rule 12(b)(6), the merits have not been adequately briefed.

### D.

Auto Lighthouse (and New World and United Commerce) also argue that even if this Court may require them to defend all seven of Ford's claims of infringement in this forum, it may not require them to defend those claims insofar as they are based on sales or offers for sale of the accused parts to *non*-Michigan residents. In other words, Defendants maintain that even if this Court can require them to defend Ford's claim that they unlawfully sold F-150 hoods to Michigan residents in this forum, it may not require them to defend Ford's claim that they unlawfully sold F-150 hoods to, say, California residents in this forum. (Defs.' Mot. at PID 1260–61.)

The Court is unpersuaded. It appears that Defendants' take their argument from the petitioner in *In re TC Heartland LLC*, — F.3d —, No. 2016-105, 2016 WL 1709433 (Fed. Cir. Apr. 29, 2016). But the Federal Circuit rejected that argument, *id.* at *3–4, and so this Court follows suit.

Relatedly, Defendants, again channeling the petitioner in *In re TC Heartland LLC*, argue that the Eastern District of Michigan is not a proper venue for this case. (Defs.' Mot. at PID 1268–69.) As the Federal Circuit also rejected that argument, *id.* at *1–3, so too must this Court.

* * *

In sum, the Court concludes that, more likely than not, Auto Lighthouse purposefully availed itself to the benefits of Michigan by selling thousands of auto parts via its website to Michigan residents and that all seven of Ford's claims of patent infringement relate to that purposeful availment. Because Ford has carried its burden on the first two prongs of the specific-jurisdiction test, and because Auto Lighthouse has not made a "compelling" showing that the "fair play and substantial justice" factors tilt in its favor, *see Celgard*, 792 F.3d at 1377, the Court concludes that requiring Auto Lighthouse to defend Ford's claims of patent infringement in the Eastern District of Michigan does not violate Auto Lighthouse's rights under the Due Process Clause.

### III.

Remaining then is the question of whether requiring the other two defendants in this case, New World International, Inc. and United Commerce Centers, Inc. (collectively, "United"), to defend Ford's claims in Michigan comports with due process.

Taking a kitchen-sink approach, Ford asserts at least four theories to support jurisdiction over United. (*See* Pl.'s Resp. at PID 2009–17.) Because the exercise of jurisdiction over United is appropriate under a stream-of-commerce rationale, the Court does not address Ford's other arguments.

Before explaining this conclusion, the Court again pauses to address Ford's burden of proof. The parties' statements of facts pertaining to jurisdiction over United appear to be in greater dispute than those pertaining to jurisdiction over Auto Lighthouse. In particular, the president of Auto Lighthouse, who is also a vice president of New World, has averred that many of Ford's statements of facts about United's contacts with Michigan are "not true" or

22

"misleading." (*See* Defs.' Reply Ex. 1, Joseph Tsai Decl.) And, as explained, when facts are in dispute and the Court does not hold an evidentiary hearing, the plaintiff must merely make a *prima facie* showing of personal jurisdiction. *Celgard*, 792 F.3d at 1378. That said, it appears that the parties primarily dispute what the evidence shows as opposed to presenting conflicting evidence. As such, the Court will proceed under the assumption that Ford must show, more likely than not, that United has purposefully availed itself to the benefits of Michigan and that Ford's claims arise out of or relate to that conduct.

The Supreme Court has recognized that—in some circumstances—a defendant that places its products into a stream of commerce that flows into the forum state can be fairly required to answer a lawsuit in that state: "[t]he forum State does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 298 (1980).

The Supreme Court, however, has not agreed on those circumstances. In *Asahi Metal Industrial Co. v. Superior Court of California, Solano County*, Justice O'Connor, writing for four members of the Court, thought that the Due Process Clause required "something more" than a mere showing that the defendant was aware that its product would enter the forum state through the stream of commerce:

> The placement of a product into the stream of commerce, without more, is not an act of the defendant purposefully directed toward the forum State. Additional conduct of the defendant may indicate an intent or purpose to serve the market in the forum State, for example, designing the product for the market in the forum State, advertising in the forum State, establishing channels for providing regular advice to customers in the forum State, or marketing the product through a distributor who has agreed to serve as the sales agent in the forum State. But a defendant's awareness that the stream of commerce may or will sweep the product into the forum State does not convert the mere act of placing the product into the stream into an act purposefully directed toward the forum State.

23

480 U.S. 102, 111–12 (1987) (O'Connor, J.). But Justice Brennan, also writing for a plurality of four justices, explained: "The stream of commerce refers not to unpredictable currents or eddies, but to the regular and anticipated flow of products from manufacture to distribution to retail sale. As long as a participant in this process is aware that the final product is being marketed in the forum State, the possibility of a lawsuit there cannot come as a surprise." *Asahi*, 480 U.S. at 117 (Brennan, J.).

The Federal Circuit has acknowledged the divergence in these two conceptions of the stream-of-commerce theory, but has not sided with one or the other. *See Nuance Commc'ns, Inc. v. Abbyy Software House*, 626 F.3d 1222, 1234 (Fed. Cir. 2010). But in *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558 (Fed. Cir. 1994), the Federal Circuit did provide guidance on what would satisfy Justice O'Connor's "something more" test.

In *Beverly Hills Fan*, Ultec, a Chinese corporation, was sued for patent infringement in Virginia. *Id.* at 1560. But Ultec had no direct ties with Virginia: it manufactured the accused product—a fan—in Taiwan, was not licensed to do business in Virginia, had no assets or employees in Virginia, and, importantly for present purposes, "ha[d] not directly shipped the accused fan into Virginia." *Id.* But Ultec's United States distributor, Royal, had established a commercial relationship with a retail chain in Virginia, and that chain was, at the time of suit, offering 52 Ultec fans for sale. The Federal Circuit explained that Ultec and Royal's "purposeful[] ship[ment] [of] the accused fan into Virginia through an established distribution channel" satisfied Justice O'Connor's conception of stream-of-commerce jurisdiction: "defendants, acting in consort, placed the accused fan in the stream of commerce, they knew the likely destination of the products, and their conduct and connections with the forum state were

24

such that they should reasonably have anticipated being brought into court there." *Beverly Hills Fan*, 21 F.3d at 1566; *see also id.* at 1565.

Under *Beverly Hills Fan* the exercise of jurisdiction over United is proper. While it is true that Auto Lighthouse independently decides which products to sell online and the prices they should sell for (Joseph Tsai Decl. at PID 2878), other evidence indicates that this is not simply a situation where Auto Lighthouse buys products from United at arm's length, and then resells those products online. To the contrary, there is considerable evidence indicating that United, beyond just selling its parts, helps Auto Lighthouse sell United inventory online.

Start with the fact that United spawned Auto Lighthouse. After operating United for years, Peter and Grace Tsai created Auto Lighthouse for tax reasons and "to give their children," Joseph, Daniel, David, and Alice Tsai, "some equity in a business." (Joseph Tsai Decl. at PID 2875; Pl.'s Resp. Ex. 21, Joseph Tsai Dep. at PID 1583.) And Joseph Tsai, the President of Auto Lighthouse and a vice president of New World, testified that Auto Lighthouse grew out of United's attempt to establish an online presence: "[United's online presence] was more of a try to see if the business had any type of proof of concept, any opportunity potential for growth. And then I think shortly thereafter, when we realized the [online] business could do well, it became a separate entity." (Pl.'s Mot. Ex. 10, Joseph Tsai Dep. at PID 2598.) Indeed, employees in United's online group transferred over to Auto Lighthouse once that company was formed. (*Id.*)

Additionally, Auto Lighthouse, with its 15 to 20 employees, still works out of the same facility as United—yet it pays United no rent. (Pl.'s Resp. Ex. 3, Joseph Tsai Dep. at PID 2442.) United also provided Auto Lighthouse with an order picker (akin to a forklift) without requiring Auto Lighthouse to pay for that piece of equipment. (Pl.'s Resp. Ex. 8 at PID 2526.) In addition to operating space and a piece of equipment, United, albeit in exchange for a fee, administers

25

Auto Lighthouse's human resources, tax reporting, payroll tax records, compensation, and health, dental, and vision insurance. (Def.'s Mot. Ex. 1 at PID 1304–05.) And United even helps Auto Lighthouse with its eBay store. In particular, the substantial eBay fee ($29,000 at one point), is paid for by United with its credit card, with Auto Lighthouse then repaying United via check or account transfer. (*See* Pl.'s Resp. Exs. 17, 26.)

More significantly, when an online purchase is made through one of Auto Lighthouse's websites, including eBay, Auto Lighthouse is aided by United, or more precisely, New World, in significant ways. (Recall, the parties do not analyze United Commerce's jurisdictional contacts separately from New World's.) In particular, following an online purchase, Auto Lighthouse accesses New World's computer system, puts a sales order in that system, and then has one of its employees go to New World's warehouse and pull the part from New World's inventory. (Pl.'s Resp. Ex. 3, Joseph Tsai Dep. at PID 2442–43; Pl.'s Resp. Ex. 9, Daniel Tsai Dep. at PID 2538– 39, 2546.) Auto Lighthouse itself has no inventory or inventory system. (Defs.' Mot. Ex. 1 at PID 1298). And when a customer receives a product from Auto Lighthouse it arrives in packaging that bears not only Auto Lighthouse's logo, but also that of New World and United Commerce. (Pl.'s Resp. Ex. 7 at PID 2493.)

It also appears that United monitors Auto Lighthouse's performance. At least on "occasion[]," United meetings involve a discussion of Auto Lighthouse (which United apparently referred to as one of its stores like, for example, the one in Little Rock). (*See* Pl.'s Resp. Ex. 19; Pl.'s Resp. Ex. 10, Joseph Tsai Decl. at PID 2588.) Minutes from one meeting state, "For ebay, Daniel [Tsai] was able to get top rated seller back, but inventory discrepancy continues to be a major issue. Hopefully the new software will help address some of the inventory issue." (Pl.'s Resp. Ex. 19.) Those same United meeting minutes further state,

26

"Amazon has really tighten[ed] up on what they allow *us* to list. . . . Will attempt to persuade them to 'loosen up' *our* requirements once *our* refund rate improves." (*Id.* (emphases added).) At another meeting, United discussed that eBay was restricting the account "due to high % of refunds" and that "Daniel [Tsai] will start listing inventory showing 1-2pc, hopefully will boost up sales." (*Id.*)

All of the foregoing suggests this: that United uses Auto Lighthouse, and in particular, Auto Lighthouse's websites, to sell its inventory nationally and into Michigan, and that United is not only aware of the national reach of Auto Lighthouse's business, it aids Auto Lighthouse in maintaining and extending that reach. The relationship between United and Auto Lighthouse is at least as close as that of Ultec and Royal in *Beverly Hills Fan* and Auto Lighthouse's availment of the Michigan forum is at least as great as Royal's of Virginia. Indeed, as noted, via its websites, Auto Lighthouse has sold over 15,000 parts, most if not all from New World's inventory, to Michigan residents. As such, the Court concludes that, more likely than not, United has used an established distribution channel, namely Auto Lighthouse and its online stores, to sell its products, on a near daily basis, to Michigan residents. The exercise of personal jurisdiction is thus proper under the stream-of-commerce theory. *See Beverly Hills Fan*, 21 F.3d at 1565–66.

Defendants argue that *Beverly Hills Fan* is "inapposite" because it "did not involve determining whether jurisdiction existed based on allegedly infringing offers for sale being made through web [s]ites that could be accessed through the United States." (Defs.' Reply at PID 2865.) True, unlike Royal in *Beverly Hills Fan*, Auto Lighthouse does not have an agreement with a retail chain in Michigan. But that is not a distinction that makes a jurisdictional difference. Auto Lighthouse's online stores allow it to accomplish the same thing as contracting with an auto-parts chain in Michigan, namely selling New World's inventory to Michigan residents.

Thus, Auto Lighthouse's websites and the regular business it does with Michigan residents through those sites is an "established distribution channel" under *Beverly Hills Fan*. *See Acushnet Co. v. Zimventures, LLC*, No. CV 15-11524-WGY, 2015 WL 9460557, at \*5 (D. Mass. Dec. 23, 2015) (finding that, under *Beverly Hills Fan*, "personal jurisdiction is proper . . . if, by virtue of the third-party [web]site, the defendant has delivered its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum state," and concluding that defendant had "established a nationwide channel of distribution in the United States, including Massachusetts by making its allegedly infringing products available for sale on golfballs.com, an authorized dealer of [Defendant's] products" (internal quotation marks omitted)); *Cornice Techs., Inc. v. Affinity Dental Prods., Inc.*, No. 04-01133, 2005 WL 1712124, at \*5 (D. Colo. July 21, 2005) (finding that, under *Beverly Hills Fan*, the exercise of jurisdiction was proper over defendant where defendant's product was available for purchase in the forum state via another company's website).

\*   \*   \*

In short, Ford has shown by a preponderance of the evidence that United "purposefully shipped the accused [parts] into [Michigan] through an established distribution channel," *Beverly Hills Fan*, 21 F.3d at 1565, and, for reasons explained in the context of analyzing jurisdiction over Auto Lighthouse, Ford's claims in this case relate to those activities. "No more is usually required to establish specific jurisdiction." *Id.*

## IV.

For the reasons given, the Court concludes that it may properly exercise personal jurisdiction over all of Plaintiff Ford Global Technologies, LLC's claims against Defendants United Commerce Centers, Inc., New World International, Inc., and Auto Lighthouse Plus, LLC.

28

Defendants' Sealed Motion to Dismiss for Lack of Personal Jurisdiction, Improper Venue, and Failure to State a Claim (Dkt. 47) is thus DENIED.

Although not critical to the Court's analysis, Defendants' Motion for Leave to File Supplemental Declaration (Dkt. 53) is GRANTED.

A notice for the parties to prepare a Rule 26(f) report and attend a scheduling conference will follow.

SO ORDERED.

s/Laurie J. Michelson
LAURIE J. MICHELSON
UNITED STATES DISTRICT JUDGE

Dated:  June 16, 2016

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing document was served on the attorneys and/or parties of record by electronic means or U.S. Mail on June 16, 2016.

s/Jane Johnson
Case Manager to
Honorable Laurie J. Michelson