UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FORD GLOBAL TECHNOLOGIES, LLC,

    Plaintiff,

v.

NEW WORLD INTERNATIONAL INC.,
AUTO LIGHTHOUSE PLUS LLC, and
UNITED COMMERCE CENTERS, INC.,

    Defendants.

Case No.  2:15-cv-10394
Honorable Laurie J. Michelson

**OPINION AND ORDER DENYING DEFENDANTS' MOTION TO DISMISS [80]**

This Court previously concluded that Plaintiff Ford Global Technologies, LLC had shown, more likely than not, that Defendants Auto Lighthouse Plus, LLC, New World International, Inc., and United Commerce Centers, Inc. could, consistent with the Due Process Clause, be required to defend seven claims of patent infringement in Michigan. *See Ford Glob. Techs., LLC v. New World Int'l Inc.*, No. 2:15-CV-10394, 2016 WL 3349041 (E.D. Mich. June 16, 2016). Defendants asked the Court to reconsider this ruling. The Court denied that motion. *Ford Glob. Techs., LLC v. New World Int'l Inc.*, No. 2:15-CV-10394, 2016 WL 3902945 (E.D. Mich. July 19, 2016). Defendants then asked the Court to reconsider *that* ruling. The Court denied that motion too. (R. 70.)

Ford has since filed a second amended complaint to assert that Defendants have infringed six additional patents. (R. 79.) This prompted Defendants to again seek dismissal for lack of personal jurisdiction (and venue). (R. 80.) Having carefully reviewed the parties' briefs, the Court will forgo oral argument, *see* E.D. Mich. LR 7.1(f)(2), and deny Defendants' motion.

I.

As this is not the first (or second) time the Court has addressed the issue of personal jurisdiction in this case, a detailed explanation for how this issue is yet again before the Court is warranted.

A.

Ford filed this suit at the beginning of 2015 and, in March 2015, amended its complaint. In its first amended complaint, Ford alleged that Defendants infringed seven of its design patents by, among other things, selling or offering to sell, parts covered by the patents. (*See* R. 15, PID 252–60.) Three of the asserted patents protect designs for three body parts of a 2004-style F-150 truck: the headlamp (U.S. Pat. No. D493,552), grille (D496,890), and hood (D493,753). (R. 15, PID 241.) The other four cover designs for parts on a 2005-style Ford Mustang: the base model's front bumper fascia (U.S. Pat. No. D498,444), the GT's front bumper fascia (D501,162), the hood (D510,551), and the taillamp (D539,448). (R. 15, PID 242.)

Not long after Ford filed its amended complaint, Defendants moved to dismiss it for lack of personal jurisdiction. Noting the excessive briefing, and that both sides suggested that jurisdictional discovery would aid in resolving their disagreement, the Court struck Defendants' motion and permitted discovery on the issue of personal jurisdiction. (R. 27.)

As relevant here, jurisdictional discovery uncovered PayPal records showing that Auto Lighthouse, via ebay.com or its own websites, had sold over 13,000 auto body parts to Michigan consumers totaling over $900,000 in sales. It also showed that, via amazon.com, Auto Lighthouse had consummated over 2,600 transactions with Michigan consumers totaling over $180,000 in sales. In other words, via its virtual stores, Auto Lighthouse had sold 15,000 parts worth over one million dollars to Michigan consumers.

As for the seven parts accused of infringement, jurisdictional discovery revealed that, via ebay.com, Auto Lighthouse had sold to Michigan consumers eleven F-150 hoods, five Mustang hoods, two F-150 headlamps, and one front bumper fascia for the base-model Mustang. (R. 50, PID 2037.) But apart from one purchase by Ford's investigator after this litigation commenced, discovery did not conclusively show that Auto Lighthouse had sold any F-150 grilles, front bumper fascia for the Mustang GT, or Mustang taillamps to Michigan consumers.

**B.**

Following jurisdictional discovery, Defendants filed a motion to dismiss Ford's first amended complaint for lack of personal jurisdiction, improper venue, and failing to plead a plausible claim of infringement. (*See* R. 47, PID 1242–43, 1245.)

To understand the personal-jurisdiction argument Defendants made, and how Ford responded, it is helpful to set out a few points of law that neither side disputed. First, the Patent Act prohibits not only the unauthorized selling of product covered by a patent, but also offering to sell such a product without authorization. *See* 35 U.S.C. § 271(a). Second, the governing test for specific personal jurisdiction is "(1) whether the defendant purposefully directed its activities at residents of the forum state, (2) whether the claim arises out of or relates to the defendant's activities with the forum state, and (3) whether assertion of personal jurisdiction is reasonable and fair." *Celgard, LLC v. SK Innovation Co.*, 792 F.3d 1373, 1377 (Fed. Cir. 2015). Third, it was (and is) Ford's burden to show that—for each infringement count—Defendants can, consistent with due process, be required to defend that count in this forum. *See Sunward Elecs., Inc. v. McDonald*, 362 F.3d 17, 24 (2d Cir. 2004); *Alcohol Monitoring Sys., Inc. v. Actsoft, Inc.*, 682 F. Supp. 2d 1237, 1245 (D. Colo. 2010). And, fourth, the Federal Circuit has not directly answered the question of whether subjecting a defendant to a patent-infringement suit in a forum

3

violates the Due Process Clause where the defendant's only relationship to the forum is that it offers the allegedly-infringing product to forum residents via a website. *Cf. Trintec Indus., Inc. v. Pedre Promotional Prod., Inc.*, 395 F.3d 1275 (Fed. Cir. 2005). Now to what the parties argued.

Defendants' motion to dismiss separately addressed personal jurisdiction over those counts where the accused part had been sold in Michigan and those counts where there was no evidence of such a sale. As to those counts where discovery had revealed at least one sale of the accused part in Michigan, Defendants argued that the sales did not amount to purposeful availment because they were via a third-party website, ebay.com, and not their own websites, e.g., autobodycarparts.com. (R. 47, PID 1252.) And, Defendants suggested, even if the ebay.com sales were jurisdictionally relevant, they were *de minimus* and thus insufficient to hale them into this forum. (*See* R. 52, PID 2860 & n.2.) As for those counts where there was no evidence that the accused part was sold in Michigan (or the sales were, in Defendants' view, *de minimus*), Defendants appeared to concede that jurisdiction might be premised on offers of the accused part to Michigan consumers. But, argued Defendants, Ford had no evidence that any Michigan consumer had actually seen the accused part in Defendants' virtual stores. (*See* R. 47, PID 1254–55.) In support of their argument that Ford had to show that a Michigan consumer viewed a webpage offering the allegedly infringing part, Defendants relied heavily on *Kindig It Design, Inc. v. Creative Controls, Inc.*, 157 F. Supp. 3d 1167 (D. Utah 2016). There, the court stated, "to establish that [Defendant] purposefully availed itself of the Utah forum, [Plaintiff] must show that [Defendant] either intentionally targeted Utah users or that Utah users actually interacted with [Defendant's] website." *Id.* at 1177 (internal quotation marks and alterations omitted).

Ford made several arguments in response. Ford argued that this Court could require Defendants to defend four (or five if its investigator's purchase counted) counts in Michigan

4

because Defendants had sold the corresponding accused parts in Michigan. (R. 50, PID 2001–02.) As for the other three (or two) counts, Ford urged the Court to adopt the rule of *Litmer v. PDQUSA.com*, 326 F. Supp. 2d 952 (N.D. Ind. 2004), and similar cases: where an alleged infringer's website allows forum residents to order the allegedly infringing product, the alleged infringer is subject to an infringement action in that forum. (*See* R. 50, PID 1995–96, 2002, 2004 n.11.) And, apparently attempting to address *Kindig It*'s suggestion that a patentee had to show that forum residents viewed the alleged infringer's online offer of the allegedly infringing part, Ford cited the following discovery: "REQUEST TO ADMIT NO. 80: Auto Lighthouse offers for sale products to the 48 continental United States, including Michigan. RESPONSE: Admit." (R. 50, PID 2003.) In this vein, Ford also argued as follows: "Plainly, Defendants' virtual stores were viewed from Michigan: the accused products were not only sold but Michigan residents have completed thousands of transactions." (R. 50, PID 2004–05.) In the alternative, Ford argued that this Court could exercise pendent personal jurisdiction over claims for which there was no independent basis for personal jurisdiction. (R. 50, PID 2006–08.)

## C.

After reviewing the parties' briefing and jurisdictional discovery, the Court denied Defendants' motion to dismiss. *Ford Glob. Techs., LLC v. New World Int'l Inc.*, No. 2:15-CV-10394, 2016 WL 3349041 (E.D. Mich. June 16, 2016). The Court rejected Defendants' argument that Auto Lighthouse's sales via third-party websites did not factor into the jurisdictional calculus: "While Auto Lighthouse does not operate or control ebay.com or amazon.com, it does control what products it sells and offers for sale on those websites. And, more importantly, Auto Lighthouse controlled which forums it would sell to. It did not exclude Michigan." *Id.* at *4. The Court thus found that by selling 15,000 parts to Michigan consumers via its own websites and

third-party websites, Auto Lighthouse had purposefully availed itself of the benefits of doing business in Michigan. *See id.*

As for the counts for which Ford had not shown that the accused part had been sold to a Michigan consumer (or had arguably only shown *de minimus* sales), the Court did not deem it necessary to wade into the parties' competing authority about whether a forum resident's ability to purchase an allegedly infringing product on a defendant's website subjected the defendant to a claim of patent infringement in that forum. *Compare Litmer v. PDQUSA.com*, 326 F. Supp. 2d 952 (N.D. Ind. 2004), *with Kindig It Design, Inc. v. Creative Controls, Inc.*, 157 F. Supp. 3d 1167 (D. Utah 2016). This was because, in this Court's view, all of Ford's infringement claims—regardless of whether a Michigan consumer had purchased the accused part or not—at least "relate[d] to" Auto Lighthouse's 15,000 sales of auto parts to Michigan consumers via the Internet. *Ford*, 2016 WL 3349041, at *6.

As for Defendants New World and United Commerce, this Court held that the exercise of jurisdiction over these defendants was appropriate "under a stream-of-commerce rationale." *Id.* at *11.

**D.**

Defendants asked the Court to reconsider its denial of their motion. (*See* R. 65.) In an explained opinion, the Court denied Defendants' request. *Ford Glob. Techs., LLC v. New World Int'l Inc.*, No. 2:15-CV-10394, 2016 WL 3902945 (E.D. Mich. July 19, 2016).

Undeterred, Defendants effectively asked this Court to reconsider its reconsideration opinion. (R. 69.) This Court denied this second motion for reconsideration without addressing the merits of Defendants' arguments. The Court instead found the motion procedurally improper. (*See* R. 70.)

**E.**

After this Court's ruling on personal jurisdiction, Ford filed a second amended complaint to add six new counts of infringement. (*See* R. 79.) Ford asserts that Defendants have additionally infringed design patents for the side mirror of the F-150 (U.S. Patent No. D496,615) and five parts of the Mustang: side mirror (D500,717), fender (D508,223), base-model rear-bumper fascia (D500,969), GT rear-bumper fascia (D500,970), and headlamp (D582,065). (*See* R. 79, PID 3983, 3995–4013.)

The second amended complaint prompted Defendants to again challenge personal jurisdiction, venue, and the plausibility of Ford's claims. (*See* R. 80.) Although "Defendants acknowledge that this Court already has ruled on a previous motion to dismiss for lack of personal jurisdiction and improper venue," they filed the now-pending motion for three reasons: "to (1) preserve and expressly not waive Defendants' positions and arguments that personal jurisdiction in this case is lacking and venue is improper, (2) obtain a ruling on Defendants' argument made in the second motion for reconsideration (Dkt. 69) that personal jurisdiction over Defendants is lacking as to certain accused parts that the evidence indicates were never sold into Michigan by Defendants, and (3) obtain a jurisdictional ruling on the six new patents added in the second amended complaint." (R. 80, PID 4225.) Defendants add: "The addition of six new patents provides an opportunity for this Court to substantively rule on the argument made in the second motion for reconsideration that appears to have been rejected based more on procedural grounds rather than on substantive grounds." (*Id.*)

## II.

### A.

Before examining the argument Defendants made in their second motion for reconsideration, the Court must clarify the legal standard that governs a motion challenging personal jurisdiction.

As explained in the Court's prior opinion, the general rule is that when, as here, the Court declines to hold an evidentiary hearing, the plaintiff need only make a *prima facie* showing that it is constitutionally fair to require the defendant to litigate a claim in the forum. *See Celgard, LLC v. SK Innovation Co.*, 792 F.3d 1373, 1378 (Fed. Cir. 2015). But there is an exception. A preponderance standard applies where (1) "the parties conduct jurisdictional discovery" and (2) "no jurisdictional hearing [is] necessary because the parties indicate[] to the district court that the jurisdictional facts [are] not in dispute." *Id.* While the parties have conducted jurisdictional discovery, they have *not* stipulated to the facts. To the contrary, the parties dispute which accused parts were sold in Michigan and how many. (*Compare* R. 80, PID 4247, *with* R. 84, PID 4313–14.) The general rule seems to apply, and Ford need only make a *prima facie* showing of personal jurisdiction for each claim.

On the other hand, it is not apparent that these factual disputes have any effect on the overall personal-jurisdiction analysis. The parties agree that jurisdictional discovery did not uncover any evidence that the Mustang taillamp was sold to anyone in Michigan. (*See* R. 92, PID 4384–85.) The Court is thus required to consider the parties' arguments about personal jurisdiction over those infringement counts where the accused part was not sold in Michigan. For that reason, and because it does not alter the Court's final conclusion, the Court will assume (without deciding) that Ford must show by a preponderance of the evidence that (1) Defendants

"purposefully directed its activities at residents of" Michigan and (2) that Ford's claims "arise out of or relate to" Defendants' activities with Michigan.

### 1.

Defendants argue that their sales via third-party websites such as ebay.com "do not constitute purposeful availment." (R. 80, PID 4231.) But this is the very argument Defendants made before. (*Compare* R. 47, PID 1252–53, *with* R. 80, PID 4231–32.) The Court's prior opinion thus fully addresses the argument. *See Ford*, 2016 WL 3349041, at *3–4. The Court therefore finds, as it did before, that "more likely than not, Auto Lighthouse purposely availed itself of the benefits of doing business in Michigan by selling thousands of auto parts to Michigan residents via several different websites." *Id.* at *3.

### 2.

Regarding the "arises out of or relates to" prong of the specific-jurisdiction inquiry, Defendants make the argument they made in their second motion for reconsideration. (*Compare* R. 69, PID 3612–19, *with* R. 80, PID 4236–42.)

To understand this argument, it is necessary to understand this Court's prior ruling. First, this Court found significant that while other Courts of Appeal used a proximate or a (more-permissive) but-for cause test to determine whether a plaintiff's claim arose out of or related to the defendant's forum activity, in *Avocent Huntsville Corp. v. Aten International Co.*, the Federal Circuit said its interpretation of the "arise out of or related to" language was "'far more permissive'" than even the but-for test. *Ford*, 2016 WL 3349041, at *6 (quoting 552 F.3d 1324, 1337 (Fed. Cir. 2008)). Second, the Court found significant that in *Inamed Corp. v. Kuzmak*, the Federal Circuit said this: "'the constitutional catch-phrase is disjunctive in nature, indicating an added flexibility and signaling a relaxation of the applicable standard from a pure "arise out of"

9

standard.'" *Ford*, 2016 WL 3349041, at *6 (quoting 249 F.3d 1356, 1362 (Fed. Cir. 2001)). And third, the Court found *Chloé v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158 (2d Cir. 2010), instructive. There, the defendant had sold just one handbag that infringed Chloé's trademark to a forum resident—and that one sale was arguably manufactured by Chloé's investigator. *Id.* at 165 & n.3. But the defendant's employer had sold 52 other handbags to forum residents via its website. *Id.* at 166–67. The Second Circuit found that even though these 52 sales of handbags were not allegedly infringing sales, they still supported a finding of personal jurisdiction: "We think the district court's characterization of Defendants' non-Chloé sales . . . too narrowly construes the nexus requirement, which merely requires the cause of action to 'relate to' defendant's minimum contacts with the forum." *Id.* at 167 (citations omitted).

Given these authorities, this Court reasoned this way: the Federal Circuit permits a loose tie between an asserted claim of patent infringement and the defendant's forum activity, *see Avocent*, 552 F.3d at 1337; *Inamed*, 249 F.3d at 1362, and, entirely consistent with that loose connection, the Second Circuit had found that the plaintiff's claim of intellectual-property infringement was "related to" the defendants' sales of *non*-infringing goods to forum residents via their website, *Chloé*, 616 F.3d at 166–67. This Court thus found that Ford's counts of infringement based on Defendants' offers or sales of auto body parts—even those counts for which it had no evidence that the accused part was sold in Michigan (e.g., the Mustang taillamp)—were at least "related to" Auto Lighthouse's 15,000 online sales of auto body parts to Michigan consumers. *See Ford*, 2016 WL 3349041, at *6.

Defendants say this was error. To state their position simply, Defendants claim that Ford must show that Defendants engaged in conduct that infringed each of the asserted patents in Michigan. (*See* R. 80, PID 4236.) In other words, it is Defendants' position that jurisdictional

10

discovery had to reveal that—in Michigan—Defendants sold or offered to sell, *see* 35 U.S.C. § 271(a), at least one infringing auto body part for each of the 13 asserted patents. (*Id.*) Defendants offer two arguments in support.

First, Defendants suggest, if not outright assert, that the Court misunderstood *Avocent*, *Inamed*, and *Chloé*. (See R. 80, PID 4235, 4238–41.) Regarding *Avocent*, Defendants point out that it was an action seeking a declaration of non-infringement and, under Federal Circuit precedent, for there to be jurisdiction over a declaratory-judgment defendant, i.e., the patentee, it must be that the patentee not only sent a cease-and-desist letter to the declaratory-judgment plaintiff in the forum, but also engaged in "other" patent-enforcement activity in the forum. (R. 80, PID 4238–40 (citing *Avocent*, 552 F.3d at 1333–34).) Because the Federal Circuit requires these "other" forum activities, Defendants imply that only in the declaratory-judgment setting does the Federal Circuit permit a loose tie between forum activity and asserted claim. (*See* R. 80, PID 4240 (citing *Avocent*, 552 F.3d at 1334).) Defendants also stress that, under *Avocent*, a declaratory-judgment defendant's other enforcement efforts must still be efforts to enforce the "patents at issue." (*See* R. 80, PID 4241.) So even if *Avocent*'s relaxed "related to" standard applied to a traditional patent-infringement suit, Defendants maintain that the relaxed standard would not permit this Court to consider sales or offers of parts that did not infringe the "patents at issue." Defendants say the "same rationale applies to *Inamed*." (*Id.*) As for *Chloé*, Defendants point out that in contrast to say, the Mustang taillamp, there was at least one allegedly infringing handbag sold to a forum resident in that case. (R. 80, PID 4235.)

Second, apart from arguing that the Court inappropriately relied on *Avocent*, *Inamed*, and *Chloé*, Defendants cite three cases in support of their rule that they can only be required to defend an infringement count in Michigan if they committed the alleged infringing conduct in

11

Michigan. (*See* R. 80, PID 4237; R. 92, PID 4385.) One is *HollyAnne Corp. v. TFT, Inc.*, 199 F.3d 1304 (Fed. Cir. 1999). There, the Federal Circuit stated: "Patent infringement occurs when a party 'without authority makes, uses, offers to sell or sells any patented invention.' Thus, for there to be specific personal jurisdiction over [Defendant] TFT in Nebraska, HollyAnne would have to allege that TFT did one of those listed activities in Nebraska." *Id.* at 1308 (quoting 35 U.S.C. § 271). Defendants also cite *Grober v. Mako Products, Inc.*, 686 F.3d 1335 (Fed. Cir. 2012). There, the patentee had no evidence that the defendant (a company that rented movie equipment) had rented the allegedly-infringing product (a stabilizing platform) to anyone in the forum. *Id.* at 1347. As the defendant "ha[d] very limited contacts" with the forum, *id.* at 1346, the Federal Circuit held that the plaintiff had not shown that the defendant "purposefully avail[ed] itself of the privilege of conducting activities within [the forum]," *id.* at 1347.

Defendants' third case is *Presby Patent Trust v. Infiltrator Systems, Inc.*, No. 14-CV-542-JL, 2015 WL 3506517 (D.N.H. June 3, 2015). There, Presby believed that Infiltrator's "ATL" septic system infringed its patent and thus sued Infiltrator in New Hampshire. *See id.* at *1. Although Presby sold septic systems in New Hampshire (and exhibited its products at trade shows in the state), it did not sell the allegedly-infringing ATL system in New Hampshire. *Id.* at *2. Relying on both *HollyAnne* and *Grober*, the court reasoned as follows: "Presby does not allege . . . that Infiltrator makes, sells, uses, or offers for sale its accused ATL system in New Hampshire, or that Infiltrator induces or contributes to the infringement by others in New Hampshire. In fact, Presby concedes that the ATL system is neither sold nor marketed in New Hampshire. In the absence of those allegations, this court cannot exercise specific jurisdiction over Infiltrator on Presby's claims for patent infringement." *Id.* at *3. In response to Presby's assertion that its infringement claim "generally 'relate[d] to' Infiltrator's septic system business,"

12

the court acknowledged that some Courts of Appeal had recognized the disjunctive wording of the constitutional catch-phrase ("arises out of or relates to"). *Id.* But, the court noted, "the Supreme Court ha[d] recently reiterated that it must be the defendant's 'suit-related conduct' that 'create[s] a substantial connection with the forum state.'" *Id.* at *3 (quoting *Walden v. Fiore*, __ U.S. __, __, 134 S.Ct. 1115, 1121 (2014)). And, in a patent-infringement case, the suit-related conduct "is the alleged infringing activity, which must occur in the forum state for specific jurisdiction to exist." *Id.* (citing *HollyAnne*, 199 F.3d at 1308).

Neither of Defendants' two arguments in support of their jurisdictional rule convinces the Court to depart from its prior ruling. To start, although both *Avocent* and *Inamed* were declaratory actions, nothing suggests that the two statements of law this Court relied on from those cases should be limited to such actions. *See Avocent*, 552 F.3d at 1337 (using general language to discuss "arises out of or relates to" standard); *Inamed*, 249 F.3d at 1362 (same). As for *HollyAnne*, the plaintiff there did not argue that the defendant's sales of non-infringing goods were relevant to the personal-jurisdiction inquiry. To the contrary, "HollyAnne conceded that it was attempting to base personal jurisdiction on [defendant's] one offer to donate *and nothing more*." 199 F.3d at 1309 (emphasis added). And *HollyAnne* had nothing to do with the sale of allegedly infringing goods online. The same with *Grober*. Additionally, in analyzing specific jurisdiction, the Federal Circuit did not simply ignore the fact that Grober had shipped products to the forum. 686 F.3d at 1347 ("Beyond shipment of an unspecified amount of products between itself and Spectrum Effects, Inc., Oppenheimer did not operate at all in California."). But, unlike here, the jurisdictional significance of these shipments could not be determined. *Id.* at 1346 ("[T]he record gives no indication of the context and significance of these shipments for [the rental company's] business."). As for *Presby*, it relied heavily on *HollyAnne* and *Grober*.

13

*See* 2015 WL 3506517, at \*3. It also failed to acknowledge that one of the Courts of Appeal that read the constitutional catch-phrase as disjunctive was the Federal Circuit. *Id.* Finally, although Defendants are correct that the defendant in *Chloé* did sell one infringing product to someone in the forum, they ignore the fact that the Second Circuit explicitly stated that its jurisdictional analysis would not change even if that sale did not amount to infringement and even if that sale (because it was consummated by Chloé's investigator) was for the purpose of manufacturing personal jurisdiction. *See* 616 F.3d at 165 n.3.

Additionally, as Ford points out, another court, on facts quite similar to those before this Court, found *Chloé* persuasive. (R. 84, PID 4300.) In *Revision Military, Inc. v. Balboa Manufacturing Co.*, Revision claimed that Balboa's "Bravo" goggles infringed two of its design patents. *See* No. 5:11-CV-149, 2011 WL 3875624, at \*1 (D. Vt. Aug. 31, 2011), *denial of preliminary injunction vacated*, 700 F.3d 524 (Fed. Cir. 2012). But Balboa's only sale of the Bravo goggles in the forum state was to Revision's investigator—and after suit had been filed. *See id.* at \*2. Bravo, however, had sold other products in Vermont during the prior two or three years, including 43 online sales. *Id.* at \*2–3. In finding that Bravo had purposefully availed itself of the benefits of doing business in Vermont, the court relied heavily on *Chloé*: "*Chloé* . . . stands for the proposition that a court must look beyond the sale of the allegedly infringing product into the forum[] in deciding the 'purposeful availment' question." *Id.* at \*9. As to the second specific-jurisdiction prong, the Court further held: "following *Chloé*, Revision's design infringement claims 'arise out of' or 'relate' to Balboa's activities in Vermont as the alleged infringing product is not only offered for sale there, but is part of a larger business plan to do business in Vermont." *Id.* at \*9.

14

Given the foregoing, the Court adheres to its prior findings that all of Ford's claims "arise out of or relate to" Auto Lighthouse's online sales and offers to Michigan consumers. *See Stryker Corp v. TIG Ins. Co.*, No. 1:05-CV-51, 2014 WL 198678, at *2 (Jan. 15, 2014) (explaining that under the discretionary aspect of the law-of-the-case doctrine, a court should balance "finality and judicial economy" against the court's "ultimate responsibility to reach a correct judgment"), *aff'd* 2014 WL 1328151 (W.D. Mich. Apr. 1, 2014). Via its online stores, Auto Lighthouse has sold 15,000 auto parts to Michigan consumers and, with near certainty, made tens of thousands of offers of auto parts to Michigan consumers. This conduct is a significant part of a bigger picture: Auto Lighthouse's business of selling auto parts via its websites to the contiguous 48 states (including Ford's home state). And "Ford's claims in this lawsuit are (at least) related to this business because it is through this business (and only through this business) that Auto Lighthouse has allegedly infringed Ford's patents." *Ford*, 2016 WL 3349041, at *6.

**3.**

Before leaving the issue of personal jurisdiction, the Court makes three additional points.

First, there appear to be only two counts of infringement where Ford has not produced evidence that Auto Lighthouse sold the accused part in Michigan. A review of the sales records produced by Ford indicates that Auto Lighthouse sold, via its virtual stores, the following ten accused parts to Michigan consumers: the F-150 hood, headlamp, and side mirror (*see* R. 50, PID 2037; R. 84, PID 4313) and the Mustang headlamp, side mirror, hood, rear bumper fascia (for both the GT and base model), fender, and base-model front bumper fascia (R. 50, PID 2037; R. 84, PID 4313–14, 4316, 4320–21). (Although Defendants offer an affidavit from Joseph Tsai, a co-owner of Auto Lighthouse and a vice president of New World, Tsai cites nothing to back his assertion that certain parts were not sold in Michigan. (*See* R. 9, PID 4246–47.)) Further, it

15

appears that Michigan consumers also purchased from Auto Lighthouse's websites at least one grille for the Ford F-150. (*See* R. 84, PID 4316 (record of sale of a grille for a Ford pickup truck with "honeycomb" styling).) Thus, for eleven counts, personal jurisdiction could arguably be established by just the infringing sales in Michigan. *See Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355, 1359 (Fed. Cir. 1998) ("[E]ven a single contact with a forum state may suffice for personal jurisdiction if it is directly and substantially related to the plaintiff's claim."); *PetEdge, Inc. v. Fortress Secure Sols., LLC*, 144 F. Supp. 3d 249, 255 (D. Mass. 2015) ("Defendants in patent-infringement cases are subject to jurisdiction wherever they sell allegedly infringing products.").

Second, the Court has some reservations about Defendants' rule that, to base personal jurisdiction on an allegedly infringing *offer*, Ford must allege (if their burden is *prima facie*) or show (if their burden is a preponderance) that a Michigan resident "accessed and viewed" a "specific webpage" that "offered for sale the specific items that have been accused of infringement." (R. 92, PID 4387; *accord* R. 80, PID 4235.) Although Defendants rely on *Kindig It Design, Inc. v. Creative Controls, Inc.*, 157 F. Supp. 3d 1167 (D. Utah 2016), for this rule, it is not clear that *Kindig It* held that a patentee must show that a forum consumer actually saw the alleged-infringer's online offer of the accused product before the patentee can base personal jurisdiction on the offer. (Defendants also cite *Larada Sciences, Inc. v. Skinner*, 147 F. Supp. 3d 1336 (D. Utah 2015), and *NexLearn, LLC v. Allen Interactions, Inc.*, No. 15-CV-01294-EFM-KGG, 2016 WL 2344580 (D. Kan. May 4, 2016), but *Larada* was authored by the same judge that authored *Kindig It* and *NexLearn* followed *Larada*.) True, the *Kindig It* court stated, "[i]f there is no evidence that what would otherwise constitute an offer was actually communicated or 'manifested' to the relevant party, the existence of an offer has not been demonstrated." *Kindig*

16

*It*, 157 F. Supp. 3d at 1177; *accord Larada*, 147 F. Supp. 3d at 1345. But, notably, the plaintiffs in *Kindig It*, *Larada*, and *NexLearn* had not shown that a forum resident had even visited the defendants' websites. *See NexLearn*, 2016 WL 2344580, at *6 ("NexLearn has not alleged any facts showing that any Kansas resident, other than those employed by NexLearn, ever visited ZebraZapps.info."); *Kindig It*, 157 F. Supp. 3d at 1177–78 ("Kindig must show that Creative Controls either intentionally targeted Utah users or that Utah users actually interacted with the website . . . . Kindig has failed to plead any facts showing that any Utah resident (other than in connection with Kindig's orchestrated sale) has ever visited Creative Controls' website." (internal quotation marks and alterations omitted)); *Larada*, 147 F. Supp. 3d at 1345–46 (same). It is not apparent that *Kindig It*, *Larada*, and *NexLearn* stand for the idea that an accused product was not offered to a forum resident when, as here, forum residents had visited the defendant's virtual store tens of thousands of times, bought 15,000 products from the defendant's virtual stores, and even bought a few products very closely related to the accused product (i.e., parts of the same vehicle).

Third and finally, the Court did not intend to completely foreclose an argument based on pendent personal jurisdiction. *See Ford*, 2016 WL 3349041, at *5 ("[T]he Court is *doubtful* that it may exercise pendent jurisdiction . . . ." (emphasis added)).

* * *

In sum, the Court finds that Auto Lighthouse purposefully availed itself to doing business in Michigan by selling 15,000 auto body parts to Michigan residents via its online stores and that all of Ford's claims that Auto Lighthouse infringed their design patents by selling and offering to sell auto body parts via its online stores at least "relate to" this purposeful availment. As for New

17

World and United Commerce, they are also subject to suit in Michigan under a stream-of-commerce theory.

## B.

In addition to arguing the absence of personal jurisdiction, Defendants "reassert and incorporate by reference the arguments to dismiss based on (1) indefiniteness, (2) lack of patent validity, (3) lack of patent infringement, (4) lack of ability to impute personal jurisdiction, and (5) failure to state a claim made in Defendants' motion to dismiss the first amended complaint." (R. 80, PID 4242–43.) Defendants also renew their venue argument from their prior motion to dismiss. (R. 80, PID 4227.)

The Court previously addressed these arguments. *Ford*, 2016 WL 3349041, at *8–11. And nothing has occurred since then to justify saying anything more. True, the Supreme Court has granted certiorari in *TC Heartland*. *See* 137 S. Ct. 614 (2016). But, as of this moment, the Federal Circuit's decision still controls.

## III.

For the reasons discussed, the Court DENIES Defendants' motion to dismiss for lack of personal jurisdiction and improper venue (R. 80).

SO ORDERED.

                                            s/Laurie J. Michelson
                                            LAURIE J. MICHELSON
Dated: April 24, 2017                U.S. DISTRICT JUDGE

## **CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on April 24, 2017.

s/Keisha Jackson
Case Manager
